# In the United States District Court for the Western District of Texas

| | | |
|---|---|---|
| MUTUAL OF OMAHA INS. CO., ET AL. | § § § § § § | SA-08-CV-785 |
| v. | | |
| JAMES D. HALSELL | | |

**FINDINGS OF FACT AND CONCLUSIONS OF LAW**

The Court conducted a bench trial on February 8, 2010. The Defendant was formerly represented by counsel. At the Defendant's request, Alan B. Padfield, Esq. filed a motion to withdraw as counsel. Docket No. 33. In the motion, the Defendant was advised of the pretrial submission deadline, the final pretrial conference date and the trial date. The Defendant failed to procure new counsel, failed to file any pretrial submissions, failed to appear at the pretrial conference, and failed to appear for trial.

Pursuant to Fed. R. Civ. P. 55, the Court finds that the Defendant is in default for failure to comply with the Court's Orders or otherwise defend.

It is ORDERED that default of the Defendant is hereby entered on the issue of liability.

Pursuant to Fed. R. Civ. P. 52, the Court enters the following findings of fact and conclusions of law.

# FINDINGS OF FACT

1. On August 27, 2007, Defendant James D. Halsell ("Halsell") entered into a general agent agreement. That agreement allowed Halsell, a licensed insurance agent in the State of Texas, to sell life insurance and other insurance products to prospective insureds on behalf of Plaintiffs. Pursuant to the agreement, Halsell agreed to abide by various company policies. Pl.'s Ex. 1.

2. The commission schedule for Halsell's sale of insurance products for Plaintiffs included commissions on certain policies that exceeded 100% of the first year premium. For numerous life insurance policies, the commission rate was as high as 130% of the first year premium. For example, if the commission rate is 130%, and the first year premium is $1,000, Halsell would be paid a $1,300 commission upon issuance of a policy that he sold. Pl.'s Ex. 2.

3. Each insurance application submitted by Halsell to Plaintiffs is required to be signed by the insurance applicant, and by Halsell, as the producer.

4. After entering into the general agent agreement, Halsell began selling a large number of life insurance policies for which the first year commission exceeded 100%. The first year premium payment on many of the policies were in the form of money orders, cashiers checks or official bank checks that were funded by Halsell, not the prospective insured. Pl.'s Ex. 3, 5, 6.

5. Halsell submitted approximately 130 insurance applications to Plaintiffs during the time that he was a producer. Pl.'s Ex. 3. Many of the

applications contained false or incorrect information:

    a. Approximately 85 applications contained incorrect social security numbers;

    b. Approximately 77 applications contained an incorrect address;

    c. Approximately 48 applications contained incorrect phone numbers of the prospective insureds;

    d. For the majority of the applications, Plaintiffs were never able to confirm that the applicant ever applied for the policy or even existed;

6. Halsell submitted approximately 129 fictitious applications to Plaintiffs in order to receive a first year commission rate in excess of 100%. On these policies, Halsell forged the insureds' signatures.

7. Halsell funded the majority of the first year premiums on applications with his own money in order to receive a first year commission rate exceeding 100%.

8. Plaintiffs' general agent agreement and guidelines prohibit a producer such as Halsell from funding the premium payment for a prospective insured.

9. Halsell's actions in submitting fictitious insurance applications to Plaintiffs violated his general agent agreement.

10. Halsell's payment of premiums by himself for applications he submitted to Plaintiffs violated his general agent agreement.

11. Halsell's scheme of submitting fictitious applications and/or funding

premiums in order to receive a commission exceeding 100% of the first year premium constituted common law fraud upon Plaintiffs.

12. Plaintiffs received monies (posing as premium payments) from Halsell in the amount of $401,071.01.

13. Halsell's total commissions received on fictitious applications totaled $478,358.87. In addition, Halsell received $2,100 as a "Drive for Cash" bonus.

14. Plaintiffs paid override commissions of $80,800.22 to American Group on fictitious applications submitted by Halsell. In addition, Plaintiffs paid a "Drive for Cash" bonus of $100 to American Group on fictitious applications submitted by Halsell.

15. Of the approximately 130 insurance policies issued by Plaintiffs on applications submitted by Halsell, only one renewed coverage after the first year. Ordinarily, 59% of Plaintiff's insureds will renew their policies after the first year for the types of coverages sold by Halsell.

16. Once Plaintiffs became aware of Halsell's fraudulent scheme they withheld $33,071.94 in commissions.

17. Plaintiffs terminated Halsell's general agent agreement on August 21, 2008.

18. Plaintiffs incurred underwriting expenses of $9,750 on the fictitious applications submitted by Halsell.

19. Plaintiffs incurred investigation expenses of $18,112.50 to uncover Halsell's scheme of submitting fictitious applications.

20. Plaintiffs are entitled to their reasonable and necessary attorneys' fees as a result of the Defendant's breach of the general agent agreement.

21. Any findings of fact which should more appropriately be deemed conclusions of law are so deemed.

## CONCLUSIONS OF LAW

1. This Court has jurisdiction pursuant to 28 U.S.C. § 1332 (diversity jurisdiction). Venue is proper in this district and division.

2. Defendant James D. Halsell breached his general agent agreement with Plaintiffs.

3. Plaintiffs have suffered actual damages totaling $155,078.64 as a result of Halsell's breach of his general agent agreement.

4. Halsell committed common law fraud on Plaintiffs through his scheme of submitting fictitious applications and funding the premium payments himself.

5. Plaintiffs suffered actual damages of $155,078.64 as a result of Halsell's fraudulent scheme.

6. Plaintiffs are entitled to recover their reasonable and necessary attorneys' fees based on Halsell's breach of his general agent agreement.

## CONCLUSION

It is Ordered that Plaintiffs Mutual of Omaha Insurance Company and United of Omaha Life Insurance Company recover of the Defendant James D. Halsell the sum of $155,078.64 with interest thereon at the rate provided by law. Plaintiffs are awarded their reasonable and necessary attorney's fees and

should submit an affidavit in compliance with the Western District of Texas Local Rule CV-7. Plaintiffs are awarded their costs of court and they should submit their Bill of Costs in the form required by the Clerk within fourteen days.

The Clerk is instructed to enter a Judgment in accordance with this Order.

It is so ORDERED.

SIGNED this 10th day of February, 2010.

_____
XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE